**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
| v. | : **Case No. 1:21-cr-00248-RDM-02** |
| | : |
| **TYRONE MCFADDEN, JR.,** | : |
| Defendant. | : |

**<u>DEFENDANT'S MEMORANDUM IN AID OF SENTENCING</u>**

COMES NOW ATTORNEY, Allen H. Orenberg, to respectfully submit this Memorandum in Aid of Sentencing on behalf of Mr. Tyrone McFadden, Jr. There can be no dispute that the Court has a duty to deliver a sentence which are not greater than necessary to comply with sentencing purposes. *See* 18 U.S.C. §3553(a).

When fashioning an appropriate sentence, Mr. McFadden requests that the Court impose a sentence of twelve (12) of months unsupervised probation coupled with community service hours, considering:

(1)     His lack of preparation or planning prior to January 6, 2021, to be part of the U.S. Capitol breach event, and his peaceful, non-destructive and non-violent behavior that day both outside and inside the U.S. Capitol building;

(2)     His immediate cooperation with law enforcement officers when arrested, as well as his ongoing cooperation and willingness to resolve his case at the earliest opportunity; and

(3)     To avoid an unwarranted sentencing disparity among similarly situated January 6th defendants.

Such a sentence is "sufficient, but not greater than necessary" to address the sentencing factors and goals set forth in Title 18 U.S.C. § 3553(a).

## I.   <u>CASE BACKGROUND</u>

On June 10, 2022, a criminal complaint [1] was filed in U.S. District Court for the District of Columbia charging Mr. Tyrone McFadden, Jr., with four (4) misdemeanor offenses related to his conduct on January 6, 2021.[1] On August 30, 2020, he self-surrendered to the U.S. Marshals in Washington, D.C., arrested and presented in the U.S. District Court for the District of Columbia. He was released by U.S. Magistrate Judge Zia M. Faruqui on personal recognizance with standard conditions. [11]

On September 7, 2022, a Superseding Information was filed charging the same four (4) misdemeanors. [50]

On December 21, 2022, Mr. McFadden appeared (VTC) before U.S. District Judge Randolph D. Moss and the Court accepted a voluntary guilty plea as to Count Four of the Information: 40 U.S.C. § 5401(e)(2)(G) (Parading, Demonstrating or Picketing in a Capitol Building). This particular statute carries a possible penalty of up to six (6) months imprisonment, five (5) years of probation and a fine of up to $5,000.00. As a Class B misdemeanor, the U.S. Sentencing Guidelines do not apply. As part of the plea agreement, [66] Mr. McFadden has agreed to $500.00 restitution and a $10.00 special assessment.

---

[1] (Count 1) 18 U.S.C. § 1752(a)(1) (Entering or Remaining in a Restricted Building or Grounds), (Count 2) 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds), (Count 3) 40 U.S.C. § 5401(e)(2)(D) (Disorderly Conduct in a Capitol Building), and (Count 4) 40 U.S.C. § 5401(e)(2)(G) (Parading, Demonstrating or Picketing in a Capitol Building).

It is counsel's understanding that Mr. McFadden is in compliance with all of his conditions of release.

The USPO Sentencing Recommendation [91] proposes a period of probation of 36 months. And, the U.S. Government asks for a period of 90 days home detention, 36 months probation and 60 hours of community services. [85]

Sentencing is scheduled for March 20, 2023, at 2:00 p.m. (VTC)

## II.      LEGAL STANDARD

Section 3553 of Title 18 of the United States Code enumerates certain factors a district court is to consider when sentencing a defendant who has been convicted of a federal offense. Primarily, the court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a). The court shall also consider the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, and provide just punishment; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id.* at § 3553(a)(2)(A-D). 18 U.S.C. § 3553(a) sets forth seven factors which a sentencing court must consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed to reflect the four primary purposes of sentencing, i.e., retribution, deterrence, incapacitation, and rehabilitation;
> (3) the kinds of sentences available;
> (4) the sentencing range established through application of the sentencing guidelines and the types of sentences available under the guidelines;

(5)) any relevant "policy statements" promulgated by the Commission;
(6) the need to avoid unwarranted sentencing disparities among
defendants with similar records who have been found guilty of similar
conduct; and
(7) the need to provide restitution to any victims of the offense.

### A.   Nature and Circumstances Of The Offense

Mr. McFadden, who lives in Baltimore, MD, took a train on January 6, 2021,

to Washington, D.C. – along with his co-defendants Carrie Williams and Aaron

Mileur. They arrived at Union Station to late to attend the "Stop the Steal" rally on

the Ellipse so the decided to go sightseeing. However, after leaving Union Station

they heard the-President Trump was speaking at the U.S. Capitol – so they decided

to go there. Mr. McFadden and his co-defendants approached the U.S. Capitol

building from the east side.  He joined a large crowd which was "pushing" towards

the Rotunda doors of the building. He then entered the U.S. Capitol building, went

directly into the Rotunda, and quickly left. The Statement of Offense [67] confirms

that Mr. McFadden was inside the U.S. Capitol building for approximately six

minutes. After leaving the building, he made a few non-violent and non-threatening

comments about his experience being inside.

 After watching video clips of January 6th after-the-fact, he regrets that he

was any part of it of the events. Mr. McFadden did not see or join with the violent

protesters who assaulted police officers and caused property damage to the U.S.

Capitol.

Mr. McFadden was not part of a group which either organized activities on

January 6th, nor does he subscribe to any far-right political views. He had no idea

where he was while he was in the Capitol building, he was only briefly inside the building, and to this day could not navigate the building.

The government concedes that Mr. McFadden committed no violent acts and destroyed no property. His actions within the U.S. Capitol have been tracked on the CCTV footage and this demonstrates that while unlawfully present in the Capitol with no excuse, he did not destroy property, steal property, commit violent acts, or encourage others to do so. Furthermore, Mr. McFadden did not exercise managerial authority over any other participant and,this, he was average or minor participant whose conduct was not peripheral to the advancement of the offense. He merely went inside for a very short period of time (6 minutes) with his co-defendants.

### Post-January 6, 2021

To his credit, Mr. McFadden has fully acknowledged his misconduct. He pled guilty at a pre-trial stage in the proceedings thus saving valuable judicial resources, as well as the resources of the U.S. Attorney's Office.

It is noted "During the pre-sentence interview, the defendant agreed with the conduct described in the Statement of Offense as presented to the Court prior to his guilty plea." *See* PSR [90] ¶ 24.

Mr. McFadden has endured life-long damage to his reputation. He reports he has been the subject of a number of media accounts lumping him with others that were there on January 6, 2021. None of this will be erased from the internet – it may be there forever. His personal character is forever besmirched, and his family will also suffer since they are inextricably intertwined with him. (as more fully described below)

**B.**    **History and Personal Characteristics of Mr. McFadden, Jr.,**

Mr. McFadden (age 38) was born in Baltimore, MD – where he has lived for his entire life. He grew-up in a normal and safe family environment. His parents are alive, both living in Baltimore, and with whom he enjoys a close relationship. He has several siblings with whom he has good relationships. As Mr McFadden puts it: "his family sticks together." *See* PSR [90] ¶ 43.  He was married, now divorced, and currently in a long-term ( 4 years) relationship with co-defendant Carrie Williams. He has two children from a prior relationship, ages 20 & 13. He reports he is close to both.

Mr. McFadden is currently unemployed, ostensibly as a consequence of a car accident in 2012.  As a result of that car accident, he has epileptic seizures. Otherwise, he reports he is in good health. He reports no mental health history. He is currently participating in substance abuse treatment and counseling classes due to testing positive form marijuana.

Mr. McFadden obtained his GED in 2003.

Mr. McFadden has a State of Maryland prior conviction (1998) for CDS: Unlawful Possession, and a 1999 State of Maryland prior conviction for CDS: Unlawful Possession and CDS: Possession with the Intent to manufacture, Distribute, Dispense. According to Mr. McFadden, he received a concurrent sentence of 4 years imprisonment as to all convictions. These convictions occurred some 23-24 years ago, when he was a teenager.

Mr. McFadden's first cousin – Ms. Shannel Hebron – writes to the Court asking for leniency. She describes her lifetime close relationship with him. As a

family member, she provides additional insights, details his struggles, and attests

to his devotion to his family.

> "... he has remained positive and reliable for friends and family. He is
> always willing to help out and has been a stable person for the younger
> cousins in our family with the doors to his home always open and a
> listening ear with strong advice when need."

See Exhibit – Letter from Shannel Hebron.

Also, as noted herein and in the PSR, the United States Sentencing

Guidelines do not apply in this case as his conviction is a Class B Misdemeanor.

He qualified for court-appointed counsel thus, any extraordinary fine

imposed by the Court will be a heavy burden on him.

All of the above personal factors, as well as his law abiding life and his post

arrest behavior, demonstrate he is capable of being a productive citizen, which the

Court can rely on as a basis to sentence him to a short term of unsupervised

probation when it considers the §3553 factors.

### C.    General Deterrence – 18 U.S.C. § 3553(a)(2)(B) – To Adequately Deter Others From Criminal Conduct

The purposes of sentencing include punishment, rehabilitation, general

deterrence, specific deterrence, and incapacitation. In this case, there appears to be

no need for incapacitation, specific deterrence or rehabilitation. The public will be

adequately deterred by the sentences meted out against those who perpetrated the

violence and mayhem at the U.S. Capitol and the negative publicity and collateral

consequences attendant to even a misdemeanor conviction for those involved. Those

who would not be deterred by these consequences are likely not deterrable. And, a

sentence that leaves a family impoverished when other reasonable alternatives exist would not promote respect for the law. Indeed, unnecessarily harsh sentences imposed upon those who were less culpable will not encourage respect for the law or promote just punishment, but are likely to be counterproductive, and labeled as political posturing. A period of probation does constitute punishment and will deter others as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms. The National Institute of Justice, Department of Justice, issued a summary of the current state of empirical research stating that "prison sentences are unlikely to deter future crime," and "increasing the severity of punishment does little to deter crime." U.S. Dep't of Justice, Office of Justice Programs, Nat'l Inst. of Justice, *Five Things to Know About Deterrence* (July 2014) (relying on Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Justice in America 199 (2013)), available at https://ncjrs.gov/pdffiles1/njj/247350.pdf.

## D.     Specific Deterrence – 18 U.S.C. § 3553(a)(2)(C) – To Protect the Public From Further Crimes Of The Defendant

Mr. McFadden's likelihood of recidivism is very low. He has expressed genuine remorse and contrition, has cooperated fully with law enforcement and he accepted the first plea offer tendered with no hesitation. His acceptance of responsibility was complete and without reservation. Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing,* 34 Crime

& Just. 1, 28 (2006)" Three National Academy of Science panels… reached that conclusion, as has every major survey of evidence." *Id.*; See *also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and Sentence Severity: An Analysis of Recent Research (1999),* summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European Countries. *Id.* at 1. It examined the effects of changes to both the certainty and severity of punishment. *Id.* While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates…were not sufficient to achieve statistical significance." *Id.* at 2. The report concluded that the "studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id.* at 1. Given Mr. McFadden age **(45)**, and other issues consistent with what is mentioned above, the likelihood of Mr. McFadden ever re-offending is as close to zero as one might come. A punishment of any jail time in this case is going to have the exact opposite effect than what is in the interest of justice. The alternatives to incarceration make financial sense, conserve bed space for individuals from which society would need greater protection and would serve the ends of justice.

A probationary sentence is further justified in this case when considering his background and history, as well as his sincere and complete remorse, his early and consistent acceptance of responsibility and the lack of a need to further deter him.[2]

## IV.   The Need To Avoid Unwarranted Sentence Disparities

Mr. McFadden urges this Court to readily contrast his behavior from the egregious conduct of other January 6th defendants. Compared to many other misdemeanor cases which have been filed in this Court, Mr. McFadden's conduct is among the most peaceful and non-threatening.

As noted herein, the defense is not aware of any evidence that his entry into the U.S. Capitol building was preplanned or coordinated with any extremist or organized group. Mr.  McFadden did not incite others to commit acts of violence or destruction. He did not engage in any violence or questionable conduct towards law enforcement. He did not destroy or steal any property from the U.S. Capitol building. Fifth, based on the Government's own investigation, He remained in a limited part of the building for six minutes in total. And the defense is not aware of any evidence suggesting that Mr. McFadden entered into the Senate or House Chambers, or any other area other than the Rotunda.

If this Court were to impose a sentence greater than a probationary term, community service, and restitution, it would create an unwarranted sentencing

---

[2]

 For those in a Criminal History Category I, the recidivism rate is 15.2%. For those who have been employed, the rate is 12.7%; and for those who were ever married, the rate is 9.8%. For those with no history of illicit drug use, the recidivism rate is half those who have a drug history. *See* U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,* at 29 (May 2004).

disparity compared to similar cases that have already gone to sentencing in this

Court. The following cases are a sampling of January 6th U.S. Capitol breach cases,

where the defendant(s) plead to 40 U.S.C. § 5104(e)(2)(G), which resulted in no

active prison time:

- *United States v. Eliel Rosa*, 21-cr-00068 (TNM) (Oct.12, 2021) (Sentenced to 12 months probation – Mr. Rosa accepted responsibility early on, did not pre-plan or coordinate activities, and did not go far into the U.S. Capital building.)

- *United States v. Valerie Ehrke*, 21-cr-00097 (PLF) (Sept. 17, 2021) (Sentenced to 36 months probation. She was inside the Capital Building and part of a crowd, but was in the back and was pushed out fairly quickly)

- *United States v. Jordan Stotts,* 21-cr-00272 (TJK) (Nov. 9, 2021) (Sentenced to 24 months probation where defendant shouted at MPD officers and posted non-remorseful comments following January 6th.)

- *United States v. Julia Sizer,* 21-cr-00621-CRC (Government requested 2 months home detention however, the Court imposed 24 months probation. She was inside the Capitol Building for approximately 2 minutes and she recorded events on her cell-phone.)

- *United States v. Jacob Lewis,* 21-cr-0100-CRC (Government requested 2 months home detention however, the Court imposed 12 months probation. Mr. Lewis was inside the Capitol Building for approximately 7 minutes.)

- *United States v. Traci Sunstrum,* 21-cr-00652-CRC (Government requested 14 days incarceration however, the Court imposed 30 days home detention. She was inside the Capitol Building for approximately 20 minutes and on 1/6/2021 she posted a brief message as a "citizen journalist.")

- *United States v. Bryan Ivey,* 21-cr-00267-CRC (Government requested 14 days imprisonment however, the Court imposed 60 days home detention. He was inside the Capitol Building for approximately 35 minutes, wave rioters inside, and took multiple videos, which he later deleted.)

- *United States v. Eric Von Bernewitz,* 21-cr-00307-CRC (Government requested 14 days imprisonment, however the Court imposed 60 days home detention. He (and his brother) was inside the Capitol Building for less than 15 minutes.)

- *United States v. Gary Edwards,* 21-cr-00366-JEB (Government requested 14 days imprisonment however this Court imposed 12 months probation. Mr. Edwards was inside the Capitol building for approximately 24 minutes.)

- *United States v. Douglas F. Macrae,* 22-cr-00181-JEB (Government requested 4 months home detention however, this Court imposed 12 months probation. Mr. Macrae was in the Capital building for approximately 3 minutes and he posted comments on social media.)

- *United States v. Caleb Jones,* 21-cr-00321-JEB (Government requested 36 months probation with 3 months of home detention however, this Court imposed 24 months probation with 2 months home confinement. Mr. Jones was inside the Capitol building for a short period of time)

- *United States v. Paula Conlon*, 22-171-JMC (Government requested 60 days imprisonment, however the Court imposed 12 months probation. Ms. Conlon was inside the Capitol building for approximately 3 minutes, and she posted comments & photos to social media.)

- *United States v. Bryan Bustos*, 22-16-CJN (Mr. Bustos was inside the Capitol Building for approximately 11 minutes. Government requested 14 days incarceration, the Court impose 24 months of probation.)

None of this is to suggest that any of these examples, for a conviction of 40 U.S.C. § 5104(e)(2)(G), should have received a sentence of incarceration / home detention, but only to suggest there is nothing materially different about Mr. McFadden or his conduct which would justify a sentence of incarceration / home detention. Judges of this district court have sentenced many January 6th misdemeanor cases (for 40 U.S.C. § 5104(e)(2)(G)) to probation or home detention or just a fine.

However the nature and circumstances of those offenses, as well as the history and characteristics of the some 85 defendants in the § 5104(e)(2)(G) cases resulting in a period of imprisonment, are based on far more egregious conduct than the conduct of Mr. McFadden  – and therefore are readily distinguished.

Mr. McFadden was far more cooperative with law enforcement, did not attempt to hide any evidence, did not participate in questionable or violent conduct, and he has not publicly blamed another group for the violence that day. All told, the facts of the offense conduct and characteristics of the defendants who garnered incarceration were starkly different than Mr. McFadden's conduct on January 6, 2021, as well as his personal characteristics.

## **CONCLUSION**

Mr. McFadden  respectfully asks the Court to impose a short term of unsupervised probation of twelve (12) months with community service hours largely because: (1) His lack of preparation or planning prior to January 6, 2021, to be part of the U.S. Capitol breach event, and his peaceful, non-destructive and non-violent behavior that day both outside and inside the U.S. Capitol building, (2) his immediate cooperation with law enforcement officers when arrested, as well as his ongoing cooperation and willingness to resolve his case at the earliest opportunity, and, (3) to avoid an unwarranted sentencing disparity among similarly situated January 6th defendants.

In the alternative, he asks that the Court consider a short non-custodial sentence with a restriction that he remain in his home except for work and excused absences to go to church and medical appointments. In the event the Court finds a

period of incarceration warranted, Mr. McFadden, Jr., asks that he be allowed to serve it on weekends, which is what the Court did in *United States v. Johnny Taylor,* 15-cr-76 (BAH). [3]

Imposition of a fine is discretionary, and, defendant respectfully submits, should not be ordered to pay a fine in this case. Defendant's financial condition (discussed herein) is such that he cannot pay any significant (additional) fine. He will, of course, remit the agreed upon $500.00 restitution and the $10.00 special assessment.

For the foregoing reasons and such other reasons that may appear just and proper, Trone McFadden, Jr., respectfully asks this Court to fashion a sentence of unsupervised twelve (12) months probation, with community service hours. This sentence is "sufficient but not greater than necessary" as required by 18 U.S.C. §3553(a). It would be a sentence in the best tradition of federal judicial discretion, which will consider Mr. McFadden, Jr., as an individual and account for his unique failings and positive attributes that, in the words of Justice Kennedy "sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Rita v. United States*, 551 U.S. at 364, (Stevens, J. concurring), *citing Koon v. United States*, 116 S.Ct. 2053 (1996).

---

[3]

Furthermore, there is a remarkable cost savings to the taxpayers of the United States if the Court imposes a period of probation rather than a term of incarceration. It is counsel's understanding that the monthly cost of imprisonment is $3,688.00, $2,980.00 for community confinement, and $371.00 monthly for supervision.

Respectfully submitted,

_____
Allen H. Orenberg, Bar No. 395519
The Orenberg Law Firm, P.C.
12505 Park Potomac Avenue, 6th Floor
Potomac, Maryland 20854
Tel. No. 301-984-8005
Cell Phone No. 301-807-3847
Fax No. 301-984-8008
aorenberg@orenberglaw.com

Dated: March 15, 2023